**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMILA FARMER,<br><br>              Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | Civil Action No. 13-7697 (JLL)<br><br><br>**OPINION** |

**LINARES**, District Judge.

Before the Court is Plaintiff Jamila Farmer ("Plaintiff")'s appeal of Administrative Law Judge ("ALJ") Leonard Olarsch's decision denying Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). For the reasons set forth below, the Court **AFFIRMS** the final decision of the Commissioner of Social Security (the "Commissioner").

## I.   BACKGROUND

### A.   Plaintiff's Medical History

Plaintiff maintains that she was disabled from November 2, 2008, the alleged onset date, through June 25, 2012, the date of the ALJ's decision. (*See* Pl.'s Br. 9, ECF No. 11). On the alleged onset date, Plaintiff was involved in a motor vehicle accident. (R. at 205).[1] Immediately after the accident, Plaintiff visited the emergency room at Christ Hospital in Jersey City, New

---

[1] "R." refers to the pages of the Administrative Record.

Jersey with complaints of back and neck pain. (*Id.* at 203-12). While there, Dr. Jaime Morales examined Plaintiff and took an x-ray of her lumbosacral spine. (*Id.* at 205-06). The examination revealed that Plaintiff had lumbar paravertebral tenderness, but that she had no extremity tenderness or limitation of motion. (*Id.* at 205). The examination also revealed no evidence of serious head, neurologic, chest, or abdominal injury. (*Id.* at 206). The x-ray was negative for fractures or dislocations. (*Id.*). Plaintiff was diagnosed with back strain and prescribed Motrin. (*Id.* at 207). Christ Hospital did not admit Plaintiff, but instead discharged her on the same day. (*See id.* at 19, 208-09).

Shortly thereafter, Plaintiff began receiving chiropractic treatment at the Jersey City Rehabilitation Clinic on November 14, 2008. (*Id.* at 252, 255). Plaintiff visited the clinic forty-eight times and received the following treatment: (1) spinal manipulation; (2) G-5 mechanical massage therapy; and (3) manual myofascial release and stretching. (*Id.* at 255). The clinic's physical examinations of Plaintiff generally revealed a limited range of motion in both her cervical and lumbar spines. (*See id.* at 252-59). The clinic advised Plaintiff not to sit or stand for prolonged periods of time and to abstain from any hard physical exertion such as heavy lifting. (*Id.* at 255). Plaintiff stopped visiting the clinic on April 4, 2009. (*Id.*).

In January 2009, Dr. Jack L. Baldasar took MRIs of Plaintiff's cervical and lumbar spines. (*Id.* at 239-40). The former revealed disc bulges at the C4-5, C5-6, and C6-7 levels. (*Id.* at 239). The latter revealed disc bulges at the L4-5 and L5-S1 levels. (*Id.* at 240).

The following month, in February 2009, Plaintiff visited Dr. Bhavini S. Chandarana at Advanced Pain Management & Rehabilitation in Newark, New Jersey. (*Id.* at 213-19). In describing the history of Plaintiff's present illness, Dr. Chandarana noted that Plaintiff had low back pain that radiated down her leg. (*Id.* at 213). Dr. Chandarana also noted that certain

2

transitional movements exacerbated Plaintiff's pain and that her chiropractic therapy, which she received three times a week, helped to reduce her pain. (*Id.*). According to Dr. Chandarana, electrodiagnostic testing revealed evidence of left L5 radiculopathy, but no evidence of myopathy, plexopathy, or peripheral neuropathy. (*Id.* at 214).

In May 2009, James Prete, D.C., prepared a report for Plaintiff's attorney summarizing her course of treatment at the Jersey City Rehabilitation Clinic. (*Id.* at 252-59). According to Prete, he based that report on Plaintiff's history, clinical objective findings, therapeutic intervention, and peripheral diagnostic modalities. (*Id.* at 252). Prete concluded that the November 2, 2008 motor vehicle accident caused Plaintiff to sustain permanent injuries. (*Id.* at 258-59). Prete's prognosis was "poor" for Plaintiff to achieve a fully recovery, and he opined that Plaintiff "will more than likely be subject to episodic exacerbations" of her injuries. (*Id.* at 258).

In October 2010, State Consultant Dr. Justin Fernando physically examined Plaintiff. (*Id.* at 278-80). At the time, Plaintiff appeared to be in no acute distress. (*Id.* at 278). Dr. Fernando first noted that: Plaintiff's gait and station were normal; she used no assistive device to ambulate; she could walk on her heels and toes without difficulty; her squat was full; her hand and finger dexterity were intact; and her grip and pinch strength were 5/5 bilaterally. (*Id.* at 278-79). With regard to Plaintiff's cervical spine, Dr. Fernando noted that while its range of motion was mildly diminished, there was no evidence of spasm or cervical or paracervical tenderness. (*Id.* at 279). With regard to Plaintiff's lumbosacral spine, Dr. Fernando noted that while there was some spinal tenderness in the midline, there was no sacroiliac joint or sciatic notch tenderness. (*Id.*). Dr. Fernando also noted that Plaintiff's straight-leg raising test was 30 degrees bilaterally in the supine position and 90 degrees bilaterally in the sitting position. (*Id.* at 279,

283).  Lastly, Dr. Fernando noted that Plaintiff had a full range of motion in her ankles, knees, hips, and upper extremities.  (*Id.* at 279).  Dr. Fernando diagnosed Plaintiff with chronic lower back pain with unilateral lumbosacral radiculopathy and provided the following statement at the end of his report:

> The examination was very nearly a normal examination with a mild degree of restriction in the flexion and extension at the lumbosacral spine.  [Plaintiff] could have pain as she claims, but the examination otherwise was a normal examination with normal and even brisk reflexes in the upper and lower extremities enough to indicate the absence of any significant disk herniations.

(*Id.*).

Also in October 2010, State Consultant Dr. Zwi Kahanowicz performed a physical residual functional capacity ("RFC") assessment of Plaintiff.[2]  (*Id.* at 284-86).  With regard to Plaintiff's exertional limitations in an eight-hour workday, Dr. Kahanowicz found that she could: lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk for six hours; sit for six hours; and perform unlimited pushing and/or pulling within the weight restrictions given. (*Id.* at 285).  Dr. Kahanowicz's findings mirror the Commissioner's definition of "light work." 20 C.F.R. §§ 404.1567(b), 416.967(b).

In February 2011, Plaintiff's treating physician, Dr. Mary Ibrahim, completed a physical RFC questionnaire concerning Plaintiff.  (*Id.* at 295-99).  Dr. Ibrahim diagnosed Plaintiff with back pain, cervical degenerative disc disease, lumbosacral degenerative disease, and radiculopathy.  (*Id.* at 295).  In doing so, Dr. Ibrahim noted that Plaintiff's symptoms were neck and back pain and described her treatment as consisting of physical therapy and medication. (*Id.*).  Dr. Ibrahim opined that in an eight-hour workday Plaintiff can:  sit for thirty minutes at

---

[2] RFC is defined as the most that a claimant can still do despite the limitations caused by her impairments.  20 C.F.R. §§ 404.1545, 416.945(a)(1).

one time before needing a break; stand for thirty minutes at one time before needing a break; sit for less than two hours; stand/walk for less than two hours; and occasionally lift/carry less than ten pounds. (*Id.* at 296-97).

In July 2011, Dr. Feng Tao took MRIs of Plaintiff's thoracic and lumbar spines. (*Id.* at 351-52). The former revealed patent central canal bilateral neural foramina, but no disc herniation spinal cord compression. (*Id.* at 351). The latter revealed normal vertebral body, height, alignment, and intervertebral disc signals and no evidence of spinal stenosis or neural foraminal stenosis. (*Id.* at 352). Also in July 2011, Dr. Ibrahim conducted an electrodiagnostic study of Plaintiff, which revealed no evidence of peripheral neuropathy. (*Id.* at 348).

In June 2012, Plaintiff attended an administrative hearing before the ALJ. (*Id.* at 15-34). She testified that she was no longer receiving physical therapy or chiropractic treatment at that time. (*Id.* at 20). She also testified that she had never received epidural injections. (*Id.*). With regard to her exertional limitations, Plaintiff testified that she: is unable to walk more than two blocks without having to stop to rest; must stand up and stretch for about ten minutes after sitting for a half hour; and can lift no more than ten pounds. (*Id.* at 23-25). Lastly, she testified that she takes Ibuprofen and Cyclobenzaprine to deal with her back pain, but that her pain persists even with the medication. (*Id.* at 24, 202).

B.   Procedural History

On May 26, 2010, Plaintiff filed applications with the Social Security Administration for a period of disability, disability insurance benefits, and supplemental security income. (*Id.* at 146-54). The Administration denied Plaintiff's application and subsequent request for reconsideration. (*Id.* at 51-54, 69-74). In response, Plaintiff filed a request for a hearing before an ALJ with the Office of Disability Adjudication and Review. (*Id.* at 75-79).

That hearing occurred before ALJ Leonard Olarsch on June 6, 2012 in Newark, New Jersey. (*Id.* at 15-34, 91). Jackie Wilson, a vocational expert ("VE"), testified at the hearing. (*Id.* at 25-31). After reviewing the facts of Plaintiff's case, on June 25, 2012, the ALJ issued a decision finding that Plaintiff was not disabled from November 2, 2008, through the date of decision. (*Id.* at 46).

Plaintiff sought Appeals Council review. (*Id.* at 12). The Appeals Council denied Plaintiff's request on October 25, 2013, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-3). As a result, Plaintiff appealed to this Court on December 19, 2013. (Compl., ECF No. 1). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g).

## II.   LEGAL STANDARD

### A.   The Five-Step Process for Evaluating Whether a Claimant Has a Disability

Under the Social Security Act, the Administration is authorized to pay a period of disability, disability insurance benefits, and supplemental security income to "disabled" persons. 42 U.S.C. §§ 423(a), 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). At step one, the ALJ assesses whether the claimant is currently performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(f), 416.920(a)(4)(i). If so, the claimant is not disabled and, thus, the process ends. 20 C.F.R. §§ 404.1520(a)(4)(f), 416.920(a)(4)(i). If not, the ALJ proceeds to step two and determines whether the claimant has a "severe" physical or mental impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Absent such impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Conversely, if the claimant has such impairment, the ALJ proceeds to step three. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ evaluates whether the claimant's severe impairment either meets or equals a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Otherwise, the ALJ moves on to step four, which involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, the ALJ proceeds to the fifth and final step of the process. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

The claimant bears the burden of proof for steps one through four. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir.

2004). "At step five, the burden of proof shifts to the . . . Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and [RFC]." *Id.* (citing *Ramirez*, 372 F.3d at 551).

  B.  <u>The Standard of Review: "Substantial Evidence"</u>[3]

  This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Consequently, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

## III. DISCUSSION

  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity throughout the relevant time. (R. at 40). At step two, the ALJ found that Plaintiff had two severe impairments: (1) lumbar spine disc bulges and (2) cervical spine disc bulges. (*Id.*). At step three, the ALJ found that Plaintiff did not have an impairment or combination of

---

[3] Because the regulations governing supplemental security income—20 C.F.R. § 416.920—are identical to those covering disability insurance benefits—20 C.F.R. § 404.1520—this Court will consider case law developed under both regimes. *Rutherford v. Barnhart*, 399 F.3d 546, 551 n. 1 (3d Cir. 2005) (citation omitted).

impairments that met or medically equaled Listing 1.04 for disorders of the spine. (*Id.* at 40-41). At step four, the ALJ found that Plaintiff had the RFC to perform light work except that she had to be allowed to stand and stretch for five minutes after every half hour of sitting. (*Id.* at 41). Lastly, at step five, the ALJ found that, considering Plaintiff's age,[4] education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. (*Id.* at 45-46). Plaintiff contends that the ALJ erred at steps two, three, four, and five. (Pl.'s Br. 10-24).

A.     Whether the ALJ's Step Two Finding is Based on Substantial Evidence

Plaintiff argues that the ALJ's step two finding was inadequate. (*Id.* at 10). In addition to finding that her disc bulges were severe impairments, Plaintiff argues that the ALJ should have also found that her "left L5 radiculopathy" was a severe impairment. (*Id.*). The Commissioner counters that Plaintiff's argument is unpersuasive for two reasons. (Def.'s Br. 6-7, ECF No. 12). First, the Commissioner contends that Plaintiff's argument presents a "distinction without a difference" because Plaintiff's left L5 radiculopathy is logically a residual or sequela of her severe lumbar spine disc bulges. (*Id.* at 6). Alternatively, the Commissioner contends that even if the ALJ erred by not finding Plaintiff's left L5 radiculopathy severe, such error was harmless. (*Id.* at 7). Both of the Commissioner's contentions have merit.

"Radiculopathy refers to nerve irritation caused by damage to the disc between the vertebrae. This occurs because of the degeneration of the outer ring of the disc or because of traumatic injury, or both. Weakness of the outer ring leads to bulging and herniation." *Stuart v. Astrue*, No. 10-2385, 2011 WL 5444074 at *2 n.6 (S. D. Cal. Aug. 3, 2011) (citation omitted).

---

[4] Plaintiff was thirty-one years old on the alleged onset date. (*See* R. at 146).

This definition suggests that the ALJ's finding that Plaintiff had severe lumbar spine disc bulges encompassed her left L5 radiculopathy.

In any event, the Third Circuit has indicated that an ALJ's erroneous finding that some of a claimant's impairments are not severe at step two is harmless if the ALJ finds that the claimant has other severe impairments. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n. 2 (3d Cir. 2007) (citing *Rutherford*, 399 F.3d at 553). Here, as noted above, the ALJ found that Plaintiff's disc bulges were severe impairments at step two. (R. at 40). What is more, the ALJ compared Plaintiff's severe impairments against Listing 1.04 for disorders of the spine at step three. (*Id.* at 40-41). The ALJ also explicitly noted that electrodiagnostic testing of Plaintiff had "revealed evidence of left L5 radiculopathy" at step four. (*Id.* at 42). Therefore, even if the ALJ erred by not finding that Plaintiff's left L5 radiculopathy was severe at step two, such error was harmless. *Cf. Frank-Digiovanni v. Colvin*, No. 12-1605, 2014 WL 2177090 at *4-5 (M. D. Pa. May 22, 2014) (finding ALJ's failure to evaluate one of claimant's impairments at step two harmless where ALJ accounted for that impairment within the decision).

B.    Whether the ALJ's Step Three Finding is Based on Substantial Evidence

Plaintiff next argues that the ALJ's step three finding is flawed because it is inaccurate and incomplete. (Pl.'s Br. 10). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled Listing 1.04 for disorders of the spine. (R. at 40-41). That listing is met when a claimant has a disorder of the spine, resulting in compromise of a nerve root or the spinal cord, along with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

> B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04.  Here, the ALJ found that the evidence failed to establish that Plaintiff's disorder of the spine met the Paragraph A, B, or C criteria.  (*See* R. at 41).  Although the discussion accompanying the ALJ's step three finding was brief, the ALJ subsequently discussed evidence in step four that supports his finding.  The ALJ's step three finding is thus adequate because there is no formal requirement that an ALJ "use particular language or adhere to a particular format in conducting his [step three] analysis."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  Rather, an ALJ's decision, "read as a whole," must permit meaningful judicial review.  *Id.*; *see also Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146 (3d Cir. 2007).

   With regard to the Paragraph A criteria, the ALJ discussed Dr. Fernando's consultative examination, which confirmed that Plaintiff's disorder of the spine did not meet the criteria since she did not have a positive straight-leg raising test in the sitting position.  (*See* R. at 42).  The straight-leg raising test is one "for the presence of lumbar disc protrusions and herniations.  'Flexion of the leg through a range of 60 to 90 degrees is considered to be normal.'"  *Brathwaite v. Barnhart*, No. 04-2850, 2007 WL 5322447 at *3 n.4 (S.D.N.Y. Dec. 20, 2007) (quoting 5-15 Attorney's Dictionary of Medicine (Third Edition) P 15.34(1) (2007)).  Dr. Fernando noted that the straight-leg raising test he administered to Plaintiff in the sitting position revealed that she

11

had a passive range of motion of 90 degrees in both her right and left legs. (R. at 279, 283). In other words, Plaintiff did not have a positive straight-leg raising test in the sitting position since that test is only positive "if there is a disparity between the findings of the legs or of less than 90 degrees is reached." *Kimbrough v. Astrue*, No. 10-751, 2011 WL 4473094 (W. D. Ky. June 30, 2011) (quoting Ann Hirshman, *Medical Proof of Social Security Disability* § 2.5). Notably, Plaintiff has not pointed to any other evidence in the record establishing that she had a positive straight-leg raising test in the sitting position. *See Meyler v. Comm'r of Soc. Sec.*, 238 F. App'x 884, 889 (3d Cir. 2007) ("The claimant bears the burden of the first four steps . . . ."). Thus, Plaintiff's disorder of the spine did not meet the Paragraph A criteria.

With regard to the Paragraph B criteria, the ALJ found that the evidence failed to establish spinal arachnoiditis. (R. at 41). Plaintiff has not pointed to any evidence suggesting that she had spinal arachnoiditis, and this Court is aware of none. She has thus failed to meet her burden.

With regard to the Paragraph C criteria, the ALJ found that Plaintiff did not meet the criteria because "the evidence [did] not demonstrate that [Plaintiff] ha[d] the degree of difficulty in ambulating as defined in 1.00B2b." (*Id.*). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B2b. The ALJ noted at step four that, according to Dr. Fernando, Plaintiff required no assistive device. (R. at 42). In doing so, the ALJ provided further support for his step three finding.

Plaintiff tries to undermine the ALJ's step three finding by arguing that her back impairments met some of the criteria set forth in Listing 1.04. (Pl.'s Br. 10). However, "[f]or a

claimant to show that h[er] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original and citation omitted). Thus, Plaintiff's argument is unavailing.

Plaintiff also argues that the ALJ's step three finding is inadequate because "there is no combination of the cervical disc disease with the lumbar disc disease." (Pl.'s Br. 10). With regard to an ALJ's duty to consider a claimant's impairments in combination with one another, the Third Circuit has suggested that an ALJ fulfills that duty if he indicates that he has done so and there is "no reason not to believe him." *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008). Moreover, a number of district courts in this Circuit have concluded that an ALJ fulfills that duty when he indicates that he has done so and offers a thorough review of the evidence in the record. *See, e.g.*, *Mason v. Astrue*, No. 09-5553, 2010 WL 3024849 at *6 (D.N.J. Aug. 2, 2010); *Jimenez v. Astrue*, No. 07-3556, 2008 WL 5377781 at *10 (D.N.J. Dec 19, 2008). As discussed above, the ALJ's decision provided a thorough review of the evidence in the record, and thus this Court has no reason not to believe his indication that Plaintiff "d[id] not have an impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments . . . ." *See, e.g.*, *Gainey v. Astrue*, No. 10-1912, 2011 WL 1560865 at *12 (D.N.J. Apr. 25, 2011) (holding that "ALJ's detailed analysis of the individual impairments and conclusion that Plaintiff did not have an 'impairment or combination of impairments' that met or equaled a listing is sufficient."). In any event, Plaintiff has not "point[ed] to any medical evidence ignored by the ALJ that would show that [Plaintiff's] impairments medically equaled one of the listings." *See Cosby*, 231 F. App'x at 146 (holding that this shortcoming is significant). The Court thus affirms the ALJ's step three finding. *See,*

13

*e.g., Jaafar v. Astrue*, No. 09-2903, 2010 WL 3001899 at *7 (D. N.J. July 28, 2010) ("Although

the ALJ's discussion at Step Three was concise, in combination with the medical findings

discussed elsewhere in the opinion it was sufficient to meet the *Burnett* requirement.").

  C.  Whether the ALJ's Step Four Finding is Based on Substantial Evidence

  At step four, the ALJ found that Plaintiff had "the [RFC] to perform light work . . . except

[she] must be allowed to stand and stretch for five minutes after every half hour of sitting." (R.

at 41). Plaintiff argues that the ALJ erred at step four by: (1) inadequately assessing the

credibility of her subjective complaints; (2) improperly granting little weight to the opinion of

her treating physician, Dr. Ibrahim; (3) failing to sufficiently support his RFC assessment; and

(4) contradicting himself. (Pl.'s Br. 11-24). The Court now considers each of Plaintiff's

arguments in turn.

  1.  Whether the ALJ Adequately Assessed the Credibility of Plaintiff's
     Subjective Complaints of Pain

  Plaintiff argues that the ALJ's assessment of her credibility is inadequate. (*Id.* at 21-23).

The Court now quotes that assessment:

> After careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms; however,
> the claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to the extent
> they are inconsistent with the above [RFC].

(R. at 41-42). At least one circuit has described that exact language as "meaningless

boilerplate." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citation omitted). Yet an

ALJ's use of such boilerplate "does not automatically undermine or discredit the ALJ's ultimate

conclusion if he otherwise points to information that justifies his credibility determination." *Id.*

at 367-68; *see generally* SSR 96-7p ("The reasons for the credibility finding must be grounded in

the evidence and articulated in the determination or decision."). Such information may include: (1) the extent of a claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment other than medication; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ pointed to information justifying his finding that Plaintiff's medically determinable impairments, *i.e.*, her disc bulges, could reasonably be expected to cause her alleged symptoms, *i.e.*, her neck and back pain. Specifically, the ALJ mentioned that Plaintiff was involved in a motor vehicle accident in November 2011 and that she was diagnosed with back strain and prescribed Motrin immediately thereafter. (*Id.* at 42). The ALJ also mentioned that MRIs taken of Plaintiff's lumbar and cervical spines in January 2009 revealed the existence of disc bulges and that multiple physical examinations had shown that her spine had a limited range of motion. (*Id.*).

The ALJ also pointed to information justifying his finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her neck and back pain were incredible to the extent that they were inconsistent with his RFC assessment. The ALJ recited Plaintiff's statements in his decision, noting that Plaintiff had testified that her back pain was chronic in nature, forced her to stand up and stretch after sitting for thirty minutes, prevented her from walking more than two blocks without rest, and allowed her to lift only ten pounds. (*Id.* at 41). The ALJ then proceeded to discuss evidence suggesting that Plaintiff's statements were exaggerated.

15

For instance, the ALJ noted that Plaintiff's course of treatment "ha[d] been essentially routine and conservative in nature. There was no evidence of surgical intervention or even steroid injections." (*Id.* at 43). Indeed, as the ALJ noted, Plaintiff's course of treatment consisted of tri-weekly chiropractic therapy sessions and the use of medication, namely, Ibuprofen and Cyclobenaprine, which are the ALJ reasoned are not "strong narcotic prescription medicines." (*Id.* at 41-43). The ALJ was entitled to rely on Plaintiff's conservative course of treatment as a grounds for discounting the credibility of Plaintiff's subjective complaints of pain. *See Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (concluding that claimant's "conservative treatment history support[ed] the ALJ's determination that [claimant's] subjective complaints of pain were not entitled to full credence"); *see also* SSR 96-7p (A claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . .").

The ALJ also cited to Dr. Fernando's October 2010 consultative examination to support his finding that Plaintiff's testimony was not fully credible. (R. at 42). As the ALJ noted, Fernando's examination "was very nearly a normal examination," with Plaintiff appearing in no acute distress and having brisk reflexes in her upper and lower extremities. (*Id.* at 42-43, 278-79). While the examination revealed that the range of motion of Plaintiff's cervical spine was mildly diminished, there was no evidence of spasm or cervical or paracervical tenderness. (*Id.* at 42, 279). Additionally, while there was some spinal tenderness in the midline of the lumbosacral area, Dr. Fernando did not observe sacroiliac joint or sciatic notch tenderness. (*Id.*).

Lastly, the ALJ referenced the July 2011 MRIs of Plaintiff's thoracic and lumbar spines to support his credibility finding. As the ALJ noted, the former revealed no disc herniation or spinal cord compression and the latter revealed normal vertebral body, height, alignment, and

intervertebral disc signals and no evidence of spinal stenosis or neural foraminal stenosis. (*Id.* at 42, 351-52). Ultimately, the ALJ's decision read as a whole illustrates that he considered Plaintiff's testimony and the objective medical evidence. As such, the Court concludes that the ALJ's credibility finding is based on substantial evidence. *See Gantt v. Comm'r of Soc. Sec.*, 205 F. App'x 65, 67 (3d Cir. 2006) ("[A]n ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence . . . ."); *see also Woods v. Astrue*, No. 07-252, 2009 WL 1177086 at *7 (D. Del. Apr. 30, 2009) (finding that the ALJ's analysis of the Plaintiff's was sufficient where the ALJ expressly considered the objective medical evidence in the record).

2.     <u>Whether the ALJ Improperly Afforded Little Weight to the Opinion of Plaintiff's Treating Physician</u>

Plaintiff next argues that the ALJ improperly "rejected" the opinion of Plaintiff's treating physician, Dr. Ibrahim. (Pl.'s Br. 11-12). Dr. Ibrahim opined that Plaintiff had the RFC to: sit for thirty minutes at one time before needing a break; stand for thirty minutes at one time before needing a break; sit for less than two hours in an eight-hour workday; stand/walk for less than two hours in an eight-hour workday; and occasionally lift/carry less than ten pounds. (R. at 296-97). The ALJ afforded Dr. Ibrahim's opinion "little weight," but did not reject it outright, as Plaintiff incorrectly states in her brief. (*Id.* at 44). That distinction matters because while "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence," an ALJ may afford a treating physician's opinion "more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted). Indeed, a treating physician's opinion "is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record. Otherwise, the opinion should be given weight proportional to the

17

medical evidence presented by the treating physician to support the opinion." *Johnson v. Comm'r of Soc. Sec.*, 398 F. App'x 727, 735 (3d Cir. 2010) (citation omitted).

Here, the ALJ afforded Dr. Ibrahim's opinion little weight because "her own reports fail to reveal the type of significant clinical or laboratory abnormalities to support such great limitations." (R. at 44). The ALJ explained that "the lumbar MRI, thoracic MRI, and electrodiagnostic studies provided by Dr. Ibrahim's practice revealed essentially normal examinations." (*Id.*). The ALJ further explained that Plaintiff's "conservative course of treatment [wa]s not consistent with what one would expect if [she] were as limited as [Dr. Ibrahim] ha[d] reported." (*Id.*). In doing so, the ALJ provided sufficient justification for affording less weight to Dr. Ibrahim's opinion. *See generally Mansfield ex rel. Givens v. Astrue*, No. 11-2191, 2012 WL 1150837 at *5 (D.N.J. Apr. 5, 2012) (affirming ALJ's decision to afford less weight to treating physician's opinion where it was inconsistent with the record as a whole).

Elsewhere in his decision, the ALJ referenced Dr. Fernando's consultative examination. (R. at 42-43). As Plaintiff points out in her brief, that examination diagnosed Plaintiff with "chronic lower back pain with unilateral lumbosacral radiculopathy" and revealed that her straight-leg raising test was 30 degrees bilaterally in the supine position. (Pl.'s Br. 11). However, as the ALJ noted in his decision, Dr. Fernando's examination was otherwise "very nearly a normal examination" with a mild degree of restriction in the flexion and extension at the lumbosacral spine and a straight-leg raising test that was 90 degrees bilaterally in the sitting position. (R. at 42, 279). Thus, Dr. Fernando's consultative examination is consistent with the ALJ's RFC.

3.      Whether the ALJ's RFC Assessment is Sufficiently Supported

Plaintiff more generally argues that "[t]here is not a single piece of evidence mustered in support" of the ALJ's RFC assessment and that it is impossible to discern how the ALJ arrived at that assessment. (Pl.'s Br. 15-16). Plaintiff's argument is unavailing. The discussion accompanying an ALJ's RFC assessment must consider and weigh all pertinent and probative evidence. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008) (citing *Burnett*, 220 F.3d at 121 and *Cotter v. Harris*, 642 F.2d 700, 705-07 (3d Cir. 1981)). Here, the ALJ supported his RFC assessment by considering and weighing the following evidence: (1) the November 2008 Christ Hospital emergency room report; (2) the January 2009 MRIs of Plaintiff's cervical and lumbar spines; (3) the May 2009 report Plaintiff's chiropractor supplied; (4) Dr. Fernando's October 2010 physical consultative examination; (5) Dr. Ibrahim's February 2011 physical RFC questionnaire; (6) Dr. Ibrahim's July 2011 electrodiagnostic study of Plaintiff; (7) the July 2011 MRIs of Plaintiff's thoracic and lumbar spines; and (8) Plaintiff's testimony at the June 2012 hearing. (*See* R. at 41-44). In doing so, the ALJ provided substantial evidence in support of his RFC assessment. *See Richardson*, 402 U.S. at 401 (Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

4.      Whether the ALJ's Step Four Analysis is Contradictory

Plaintiff also argues that the ALJ's step four analysis is contradictory. (Pl.'s Br. 23-24). The heading that introduces the ALJ's step four analysis includes the following RFC assessment: "[Plaintiff] has the [RFC] to perform light work . . . except claimant must be allowed to stand and stretch for five minutes after every half hour of sitting." (R. at 41). Yet the ALJ's step four analysis later states "that due to the fact that [Plaintiff] is unable to continually sit *or stand* for

19

prolong periods the [light work RFC] should be reduced to include an ability to stand and stretch every half hour." (*Id.* at 43 (emphasis added)).  Plaintiff suggests that the latter restriction on her ability to stand dooms the ALJ's decision. (Pl.'s Br. 23-24).  The Commissioner responds that the ALJ's inclusion of that restriction was a typographical error. (Def.'s Br. 17).  The Court agrees with the Commissioner.

Courts in this Circuit have been willing to categorize an inconsistency in an ALJ's decision as a typographical error when the ALJ's intent is otherwise apparent from the decision as a whole. *Mason*, 2010 WL 3024849 at *7 n.5. As the Commissioner points out, had the ALJ indeed intended to find that Plaintiff was unable to continually stand for prolonged periods, he would have followed that finding with an accommodation permitting her to sit after standing for a certain amount of time. Yet the ALJ only reduced Plaintiff's light work RFC "to include an ability to stand and stretch every half hour." (R. at 43).  The ALJ explicitly noted that restriction twice in his decision, thereby clarifying his intent. (*Id.* at 41, 43).  Additionally, by allowing Plaintiff to stand and stretch after every half hour of sitting, the ALJ was consistent with Plaintiff testimony "that due to her chronic back pain she must stand up from sitting after 30 minutes to stretch." (*Id.* at 41).

Moreover, the ALJ noted in step five of his decision that he had "asked the [VE] expert whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]." (*Id.* at 45).  Specifically, the ALJ asked the VE:

> Assume you have a hypothetical individual with [Plaintiff's] education, training and work experience, limited to the full range of light work except that when sitting the person must stand and stretch every half hour for five minutes. Assuming that hypothetical, could such person do [Plaintiff's] past relevant work?

(*Id.* at 26-27).  Noticeably absent from that question is any restriction to Plaintiff's ability to

stand for prolonged periods.  The following exchange between the ALJ and the VE further

clarifies that the ALJ intended to restrict only Plaintiff's ability to sit for prolonged periods:

> ALJ:  So are there any jobs that exist in the regional or national
> economy that a person that I described could perform?
>
> VE:  Your honor, I just want to make sure that she needs to stand
> and stretch.  I mean, some of the times the jobs that are
> light, the person may be standing.
>
> ALJ:  Well, this is when she's sitting.
>
> VE:  When she's sitting.

(*Id.* at 28).  After that exchange, it would have been odd for the ALJ to have intentionally

restricted Plaintiff's ability to stand for prolonged periods, as well.  Thus, for the above reasons,

the Court concludes that the ALJ's isolated statement that Plaintiff was unable to continually

stand for prolonged periods of time was a typographical error.  *See, e.g.*, *Kosh v. Colvin*, No. 12-

1041, 2013 WL 3816677 at *3 n.2 (W. D. Pa. July 22, 2013) (concluding that ALJ statement that

plaintiff "can perform work requiring kneeling, crawling, or squatting" in step four RFC

assessment was a typographical error since the ALJ described a hypothetical individual who was

precluded from those activities at the hearing).

    D.    <u>Whether the ALJ's Step Five Finding is Based on Substantial Evidence</u>

Plaintiff suggests that the ALJ erred at step five by failing to discuss the hypothetical

question her former representative asked the VE.  (Pl.'s Br. 17).  Specifically, Plaintiff's former

representative asked the VE:

> [Plaintiff] is unable to stand for more than 30 minutes at one time,
> in addition would have to alternate sitting for 30 minutes at one
> time, and at one time would be unable to walk for more than one or
> two blocks, and an inability to lift over 10 pounds at any moment.

> Can the [Plaintiff] perform her past work or any work in the
> national or regional economy?

(R. at 30). The VE responded that there are no such jobs existing in the economy. (*Id.* at 30-31). Contrary to Plaintiff's suggestion, the ALJ was under no obligation to discuss her former representative's hypothetical question.

"An ALJ is required to accept only hypothetical questions which accurately reflect a plaintiff's impairments." *Tudi v. Colvin*, No. 13-1423, 2014 WL 2860642 at *5 (W. D. Pa. June 23, 2014) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)). The hypothetical question Plaintiff's former representative asked the VE did not reflect the impairments the ALJ found and articulated in his RFC assessment at step four. Therefore, the ALJ did not need to discuss that question. *See, e.g., Conklin v. Comm'r of Soc. Sec.*, No. 09-1450, 2010 WL 2680278 at *9 (D.N.J. June 30, 2010) ("The ALJ was not required to rely upon the answers to any supplemental hypotheticals submitted by the parties. Nor was the ALJ required to explain his decision not to rely upon the supplemental hypothetical and additional limitation it assumed, having already thoroughly explained his determination of Plaintiff's RFC.").

## IV.   CONCLUSION

The Court has reviewed the entire record and, for the reasons discussed above, concludes that substantial evidence supports the ALJ's determination that Plaintiff was not disabled. As such, the ALJ's decision is affirmed. An appropriate Order accompanies this Opinion.

DATED: August 25, 2014

_____
JOSE L. LINARES
U.S. DISTRICT JUDGE